Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
Jonathan E. Phillips (SBN 233965)
*jphillips@larsonllp.com*
Mehrunisa Ranjha (SBN 318399)
*mranjha@larsonllp.com*
Benjamin Falstein (SBN 342867)
*bfalstein@larsonllp.com*
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone:   (213) 436-4888
Facsimile:   (213) 623-2000

Attorneys for Petitioner and Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| AMERICAN MEDICAL RESPONSE OF INLAND EMPIRE, a California corporation,<br><br>Petitioner and Plaintiff,<br><br>vs.<br><br>COUNTY OF SAN BERNARDINO, a California municipal corporation; COUNTY OF SAN BERNARDINO BOARD OF SUPERVISORS, an elected body; INLAND COUNTIES EMERGENCY MEDICAL AGENCY, a local emergency medical services agency; CONSOLIDATED FIRE AGENCIES, a Joint Powers Authority; and DOES 1-10,<br><br>Defendants and Respondents. | Case No. 5:24-CV-00267<br><br>**VERIFIED COMPLAINT AND PETITION FOR:**<br><br>**(1) Violation of Sherman Antitrust Act (15 U.S.C. § 1);**<br><br>**(2) Writ of Mandamus (CCP §§ 1085, 1094.5);**<br><br>**(3) Declaratory Relief – Proposition 26 (CCP § 1060)** |
| CONSOLIDATE FIRE AGENCIES, a Joint Powers Authority,<br><br>Real Party in Interest. | |

Petitioner and Plaintiff American Medical Response of Inland Empire ("AMR") alleges as follows:

## **INTRODUCTION**

1. For over 40 years, AMR has contracted with Defendants and Respondents Inland Counties Emergency Medical Agency ("ICEMA") and County of San Bernardino (the "County") as the exclusive "grandfathered" ambulance provider to the County and its residents. In December 2022, ICEMA and the County departed from this practice and for the first time published a state-approved Request for Proposals ("RFP") for the purpose of selecting the ambulance provider for the next exclusive five-year contract with the County.

2. Two providers submitted proposals in response to the RFP: AMR and Defendant and Real Party in Interest Consolidated Fire Agencies ("CONFIRE"). The requirements set forth in the RFP were strict. Among other things, the County was required to award the exclusive contract to the bidder with the *highest* scoring proposal. Moreover, any provider whose proposal failed to meet the minimum qualifications specified in the RFP could not be considered at all.

3. These strict requirements in the RFP were not implemented by accident—they were designed to ensure a *competitive* process for the selection of an exclusive ambulance provider, as required by state law. Strict adherence to this state-approved process is the *only* basis upon which the County can maintain immunity from federal antitrust liability. Yet, based on the process actually employed by the County, it is clear the County was willing to disregard this mandatory process in order to award the contract to its pre-ordained preferred provider—CONFIRE—regardless of whether it had submitted the best bid. In other words, the process actually employed by the County was not truly competitive at all.

4. The independent, non-biased review committee administering the RFP process gave AMR's proposal a higher score than CONFIRE's proposal based on scoring criteria set forth in the RFP.

5. Despite AMR's status as the winning bidder, the County notified AMR and CONFIRE that draft contracts from *both* bidders would be presented to Defendant and Respondent County of San Bernardino Board of Supervisors (the "Board of Supervisors") for consideration

and ultimate award. Thereafter, at its December 5, 2023 regular meeting, the Board of Supervisors voted to award the contract to the losing bidder, CONFIRE. By negotiating with and ultimately awarding the contract to an ambulance services provider with an inferior bid, the County and its Board of Supervisors acted contrary to the RFP and state law—and, consequently, outside the narrow confines of their antitrust immunity.

6.     In fact, CONFIRE's proposal should not have been considered to begin with, as it failed to fulfill basic minimum requirements mandated by the RFP. Nevertheless, the County and Board of Supervisors deliberately disregarded the glaring deficiencies in CONFIRE's proposal when they allowed it to move forward in the process and ultimately decided to award CONFIRE the next exclusive ambulance services contract.

7.     As demonstrated by the outright failure to adhere to the mandatory requirements of the state-approved RFP, the County, the Board of Supervisors, and ICEMA clearly never intended for the selection process to be competitive at all. Instead, the decision to award CONFIRE the exclusive ambulance services contract appears to have been carried out for the sole purpose of exploiting additional sources of revenue for which only CONFIRE would be eligible and that would ultimately benefit the County.

8.     As a result of Defendants' anti-competitive conduct, AMR will be forced to cease ambulance services it has heretofore diligently provided in the County since the 1970s, thereby jeopardizing the livelihoods of AMR's employees and the safety of the County's residents.

## PARTIES

9.     AMR is, and at all relevant times was, a corporation formed under the laws of the State of California and doing business in California.

10.    The County is, and at all relevant times was, a general-law county and political subdivision of the State of California.

11.    The Board of Supervisors is, and at all relevant times was, the local elected body governing the County.

12.    Defendant and Respondent ICEMA is, and at all relevant times was, the County's designated Local Emergency Medical Services Agency ("LEMSA") under California Health and

Safety Code section 1797.200.

13. CONFIRE is, and all relevant times was, a Joint Powers Authority authorized under the laws of California, Government Code section 6500 *et seq*. CONFIRE primarily provides emergency communications and dispatch services to its members, which consist of thirteen public fire agencies, all located within the County. CONFIRE is named as a real party in interest for the Second Cause of Action alleged herein because it is the recipient of the contract for ambulance services described within to which it may claim an interest. CONFIRE is named as a Defendant only as to the Third Cause of Action.

14. AMR is ignorant of the true names and capacities of Defendants and Respondents sued herein as Does 1-10 ("DOES 1-10"), inclusive, and therefore sues these Defendants and Respondents by fictitious names. AMR is informed and believes, and therefore alleges, that DOES 1 through 10 are in some manner responsible for the acts and occurrences set forth herein and are legally liable to AMR. AMR will seek leave to amend this Complaint and Petition to allege the true names and capacities of these fictitiously named Defendants and Respondents, together with the appropriate allegations, when ascertained.

## JURISDICTION AND VENUE

15. This case arises under 15 U.S.C. § 1. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

16. Venue in the United States District Court for the Central District of California is proper pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

17. AMR is an experienced ambulance provider that has faithfully served the County and its citizens since the 1970s, with a focus on delivering the highest quality, cost-effective patient care as the centerpiece of its business model. As testament to its exceptional service, AMR has held an exclusive contract with the County's designated local emergency medical services authority—ICEMA—as a grandfathered provider of ambulance services under the EMS Act since January 1, 1981. Accordingly, until now, ICEMA had never before utilized a competitive process

for selecting an ambulance provider for the County. AMR's current contract is set to expire on March 31, 2024.

**California's Emergency Medical Services Act and Federal Antitrust Immunity**

18.     Prehospital emergency medical services ("EMS") in California are governed by the Emergency Medical Services System and Prehospital Emergency Medical Care Personnel Act (1980) ("EMS Act"). The EMS Act is a comprehensive statutory system governing virtually all aspects of EMS, including the provision of ambulance services in situations when individuals need immediate medical care. Health & Safety Code § 1797 *et seq.*

19.     The EMS Act established a two-tiered system for EMS regulation. At the state level, the Emergency Medical Services Authority ("EMSA") oversees and regulates the coordination of state activities involving EMS. Health & Safety Code, §§ 1797.1, 1797.100, 1797.107. At the local level, a LEMSA administers the local EMS program and oversees the delivery of EMS within a specified geographic area. *Id.,* §§ 1797.94, 1797.200.

20.     LEMSAs are responsible for planning, evaluating, and implementing an "EMS system," which the EMS Act defines as an organized system for provision of personnel, facilities, and equipment—like emergency medical technicians, paramedics, and ambulances—for effective delivery of EMS. *See* Health & Safety Code, §§ 1797.78, 1797.94, 1797.204.

21.     For a county to develop an EMS program, it must "designate" a LEMSA. *Id.,* § 1797.200. The EMS Act recognizes LEMSAs as agencies distinct from their counties. *Id.,* §§ 1797.94, 1797.200. As the Act provides, a LEMSA—not the county—is "the agency, department, or office having primary responsibility for administration of emergency medical services in a county." *Id.,* § 1797.94. Counties and LEMSAs accordingly may not share statutory powers and duties under the EMS Act.

22.     A LEMSA must also maintain "medical control" of the EMS system and formulate policies and procedures in accordance with the medical standards imposed by EMSA. Health & Safety Code, §§ 1797.94, 1797.202; 1797.204, 1797.220. As part of this responsibility, a LEMSA must have a medical doctor/physician as its medical director. Health & Safety Code, §§ 1797.90, 1797.202, 1798. An EMS system must therefore operate under distinctly medical (rather than

political) management.

23.     As part of its responsibilities, a LEMSA must develop—and submit to EMSA for approval—an annual EMS plan for delivering EMS consistent with California law. Health & Safety Code, §§ 1797.76, 1797.206, 1797.250, 1797.252, 1797.254.

24.     A LEMSA may create exclusive operating areas when developing its local EMS plan. *Id.,* § 1797.224. An exclusive operating area ("EOA") is an area within a LEMSA's geographic jurisdiction, and defined by the local EMS plan, that the LEMSA has restricted to certain emergency ambulance services or providers of emergency services. *Id.,* §§ 1797.74, 1797.85.

25.     The EMS Act only authorizes LEMSAs to create EOAs; Counties "recommend" EOAs, but are nowhere empowered to create them. *Id.,* §§ 1797.74, 1797.85, 1797.224.

26.     Fundamental to the establishment of an EOA, the LEMSA must use a "competitive process" when selecting the provider(s) to whom the EOA is restricted. Health & Safety Code, § 1797.224. The only exception to this is that no competitive process is required if a LEMSA continues the use of an existing EMS provider that has provided EMS without interruption since on or before January 1, 1981. *Id.*

27.     If a LEMSA decides to use a competitive process, it must first submit the contemplated process to EMSA for approval. *Id.* If a county intends to select an exclusive ambulance services provider, its selection process must conform to the process approved by EMSA. *Id.*

28.     The mandatory procedure for selecting an exclusive provider under the EMS Act was expressly created for the purpose of ensuring compliance with federal antitrust laws. This is because exclusive contracts for local public services inherently operate as illegal restraints on trade in violation of the Sherman Antitrust Act.

29.     However, a narrow exception to antitrust liability exists where anticompetitive conduct at the local level is authorized by a state law establishing a clearly articulated and affirmatively expressed state policy to displace competition. As such, immunity will only attach to the activities of local governmental entities if they are undertaken pursuant to this state policy.

30.     California's clearly articulated and affirmatively expressed policy authorizing local governments to confer exclusivity in the provision of ambulance services is set forth in the EMS Act. That is, through the EMS Act, the legislature announced its intent to "ensure the provision of effective and efficient emergency medical care" by prescribing and exercising "the degree of state direction and supervision over emergency medical services as will provide for state action immunity under federal antitrust laws for activities undertaken by local government entities." Health & Saf. Code, § 1797.6. Specifically, the legislature, through section 1797.224, has clearly expressed a state policy authorizing localities to create EOAs for emergency services, but only on the condition that such exclusivity agreements be reviewed and approved at the state level by EMSA.

**The County and ICEMA's Request for Proposals for Exclusive Ambulance Service Provider**

31.     On December 20, 2022, the County and the County's designated LEMSA—ICEMA—published the RFP, soliciting written proposals for the provision of ground ambulance transportation services, interfacility transports, and critical care transports for an initial five-year contract. (*See* Exhibit 1, p. 5). Through the RFP, the County and ICEMA sought to award a contract to an exclusive ambulance provider for the EOA established by ICEMA. (*Id.*, p. 5-6).

32.     The RFP established the required qualifications for EMS providers, the rules for proposals, the procedures for selecting a winning proposal and awarding the contract, and the procedures for protesting and appealing contract decisions. (*See generally Id.*). In accordance with Health and Safety Code section 1797.224, the County and ICEMA received approval from EMSA on November 29, 2022 for the RFP.

33.     The RFP provided for the establishment of an independent, non-biased Proposal Review Committee (the "Review Committee") appointed by the County. (*Id.*, p. 20). Each member of the Review Committee would evaluate and score the proposals based on specified criteria. (*Id.*). The scores from all the evaluators would be calculated to arrive at a final score for each proposal. (*Id.*).

34.     The specified evaluation criteria consisted of the following categories: organizational experience, key leadership experience, reference letters, financial condition, legal

1   history, evidence of insurance, and evidence of the provider's ability to provide a performance

2   bond or irrevocable letter of credit. (*Id.*, p. 92). The relevant factors upon which each of these

3   criteria would be evaluated were detailed throughout the RFP.

4        35.     The RFP specifies that the Review Committee would only recommend the highest-

5   scoring bidder for final negotiation of contract terms with the County. (*Id.*, p. 20-21). Negotiations

6   may only commence with the next highest-rated bidder if the County terminates negotiations

7   with the highest-scoring bidder for failure to negotiate. (*Id.*).

8        36.     After the completion of contract negotiations with the highest-scoring bidder, the

9   County would then issue a Notice of Intent to Award, and the winning proposal would then be

10   submitted to the Board of Supervisors for ultimate award of the contract. (*Id.*, p. 21).

11        37.     In other words, the RFP explicitly provided that a contract would only be awarded

12   to the bidder with the highest scoring proposal. (*Id.*).

13        38.     However, for a proposal to even be considered at all, each bidder was required to

14   fulfill certain minimum qualifications specified in the RFP, along with supporting documentation

15   of its ability to do so. (*Id.*, p. 24). The RFP is explicit: proposals not meeting the minimum

16   qualifications would be disqualified and would not be evaluated by the Review Committee. (*Id.*).

17        **The Selection Process**

18        39.     The deadline for submitting proposals in response to the RFP was March 23, 2023.

19   AMR and CONFIRE were the only two providers to submit proposals for consideration.

20        40.     While AMR has decades of experience in providing ambulance services throughout

21   the County and beyond, CONFIRE itself is not an ambulance provider but is instead a secondary

22   public safety answering point established to provide dispatch and communication services to the

23   public fire agencies comprising its membership. As the RFP itself indicates, *none* of CONFIRE's

24   thirteen member agencies are capable of performing the full range of emergency and non-

25   emergency ambulance services currently performed by AMR, including ambulance transport

26   services as well as advanced life support and basic life support response. (*Id.*, p. 10-13). In

27   addition, none of the thirteen member agencies have ever provided ambulance transport in an

28   EMS system of the size and scope of the County—which is the largest county in the United States

1    and is larger than the states of New Jersey, Connecticut, Delaware, and Rhode Island *combined*.

2    As a result of these limitations, CONFIRE and its member agencies lack the resources and

3    capabilities to perform the services contemplated in the RFP. CONFIRE's proposal indicated that

4    it would be able to fulfill the RFP's requirements by subcontracting with a private ambulance

5    provider, Priority Ambulance, LLC ("Priority")

6         41.     As evidenced by CONFIRE's proposal, while it would be the primary contracting

7    entity, the vast majority of the funding to support the provision of ambulance services would

8    actually come from Priority. Specifically, of the $63,000,000 in total funding, $57,000,000—*over*

9    *90%*—would come from Priority. (Ex. 2, p. 276). Moreover, Priority would be the main provider

10   of the services called for in the RFP. In other words, CONFIRE, a government entity, seeks to

11   partner with a private entity, Priority, as a means of making itself a market participant. Although

12   such an arrangement is technically permitted under the RFP, the subcontractor (Priority) is held to

13   the same minimum qualifications enumerated therein. (Ex. 1, p. 24).

14        42.     The Review Committee conducted its evaluation of the CONFIRE and AMR

15   proposals over the course of the next several months, which was ultimately completed in or

16   around June 2023.

17        43.     AMR's proposal received the highest score based on the scoring metrics specified

18   in the RFP. And because AMR had the highest scoring proposal, it was the *only* bidder with whom

19   the County could commence contract negotiations. Notwithstanding this express requirement, the

20   County announced on June 6, 2023 that it would begin contract negotiations with both AMR *and*

21   CONFIRE and would thereafter make a recommendation to the Board of Supervisors based on the

22   outcome of those negotiations. (Ex. 3).

23        44.     On October 27, 2023, the County announced that it had completed its contract

24   negotiations with both bidders. Consistent with the procedures set forth in the RFP, the County

25   issued a Notice of Intent to Award indicating that "AMR received the highest score and will

26   receive the independent evaluation committee's recommendation for award as stated in the RFP."

27   (Ex. 4). However, in direct contravention of the state-approved RFP procedures, the County

28   further indicated that, "because the difference in scores is substantially equivalent, draft contracts

1  from each proposer will be presented to the Board of Supervisors for considerations and ultimate

2  award." (*Id.*).

3       45.     On November 3, 2023, AMR submitted a protest to the County on the grounds that

4  ICEMA and the County's failure to adhere to the selection procedures and requirements specified

5  in the RFP subverted the competitive process for contract selection, as mandated by state and

6  federal law. (*See* Ex. 5).

7       46.     By letter dated November 28, 2023, the County notified AMR that its protest was

8  denied. (Ex. 6). The County informed AMR that denial of its protest was justified based on two

9  general provisions in the RFP. First, the County cited the language under the provision in the RFP

10  titled "Scope of Work," which provided that: "[t]he County intends to award an initial five (5)

11  year contract to the highest scoring Proposer whose proposal conforms to the RFP and whose

12  proposal *presents the greatest value to the residents and visitors in the San Bernardino County*"

13  EOA. (*Id.* (emphasis in original), (citing Ex. 1, p. 6)). The County also cited to a different general

14  provision titled "Proposal Process" that similarly indicated the County's intention to award the

15  contract to the proposal that "receives the highest score" and that "*best meets the needs of the*

16  *County*." (Ex. 6 (emphasis in original), (citing Ex. 1, p. 16)). The County contended that the

17  foregoing emphasized language bestowed on the County and Board of Supervisors the sole

18  discretion to select the contract for ambulance services. (*See* Ex. 6).

19       47.     In essence, the County took the position that the discretion it had asserted entitled

20  the County and Board of Supervisors to disregard the evaluation prepared by the non-biased

21  Review Committee and further empowered the County and Board of Supervisors to disregard the

22  RFP's mandatory requirement that only the highest scoring proposal would receive consideration

23  for award of the contract. Not only is this mandatory requirement contained in the same general

24  provisions that the County cited in its denial of AMR's protest, it is also reiterated in the several

25  specific provisions throughout the RFP setting forth the process for negotiating with, and

26  ultimately awarding the contract to, the highest-scoring bidder. (*See, e.g.*, Ex. 1, p. 6, 16, 20-21).

27       48.     In compliance with the protest procedures set forth in the RFP, following the

28  County's denial of the protest, AMR thereafter lodged a formal notice of protest with the clerk of

1  the Board of Supervisors on November 30, 2023. (Ex. 7). As explained in the RFP, the protests

2  submitted by AMR "constitute[d] the sole administrative remedy available" to it, and "[u]pon

3  exhaustion of this remedy no additional recourse is available." (Ex. 1, p. 23).

4      49.    On December 5, 2023, the Board of Supervisors held its regular meeting during

5  which the higher-scoring draft contract submitted by AMR and the inferior draft contract

6  submitted by CONFIRE were both presented for consideration. Following several rounds of public

7  comments, the Board of Supervisors briefly discussed the two draft contracts. Board of

8  Supervisors Chair Dawn Rowe declared that, notwithstanding the mandatory requirements in the

9  RFP, the Board of Supervisors possessed the sole discretion to determine which draft contract to

10 select.[1] Chair Rowe cited to the same language in the RFP relied on by the County in denying

11 AMR's protest, which provided that "[t]he County realizes that criteria other than price is

12 important and will award a contract based on the highest scoring proposal that demonstrates the

13 best value and meets the needs of the County." (Ex. 1, p. 6).

14     50.    As did the County, Chair Rowe did not consider the fact that the "highest scoring

15 proposal" *is necessarily* the proposal that "demonstrates the best value and meets the needs of the

16 County." In other words, there was already a procedure for selecting the proposal that

17 demonstrates the best value and that meets the needs of the County—and that procedure is

18 established by the criteria set forth in the state-approved RFP. The Board of Supervisors, however,

19 took the position that it was permitted to conduct its own evaluation of these criteria—

20 notwithstanding the non-biased Review Committee already having done precisely that.

21     51.    The matter was thereafter put to a vote, and in a unanimous decision the Board of

22 Supervisors voted to deny AMR's protest, without any discussion of the merits of AMR's

23 contentions therein. After denying the protest, the Board of Supervisors then unanimously voted to

24 award the exclusive contract for ambulance services to CONFIRE.[2]

25

26 [1] San Bernardino County Board of Supervisors, Regular Meeting (Dec. 5, 2023),
   https://sanbernardino.granicus.com/player/clip/6338?view_id=13&redirect=true&h=3bd94be9759

27 fdb53fabd483e49d037fc

28 [2] *See* source cited *supra* note 1.

52.     The vote by the Board of Supervisors was directly contrary to the mandatory requirement in the RFP that only the highest-scoring proposal would ultimately be awarded the contract.

53.     Beyond the complete abdication of its duty to adhere to the RFP requirements, the Board of Supervisors' cursory vote to deny AMR's protest further violated the requirements of the Brown Act. Cal. Gov. Code § 54950 *et seq*. Specifically, section 54954.2 of the Act requires the Board of Supervisors to post an agenda in advance of its next regular meeting identifying each distinct item of business to be discussed therein. AMR's protest, however, was never included in the December 5, 2023 agenda, and yet the Board of Supervisors unanimously voted to deny the protest during that meeting. Accordingly, by letter dated December 19, 2023, AMR demanded that the Board cure the Brown Act violation. (Ex. 8). In response, the Board of Supervisors simply issued a new agenda prior to its next meeting that included AMR's protest, and the Board thereafter reaffirmed its denial of AMR's protest—again, without any discussion of the contentions AMR had set forth regarding the deeply flawed, and entirely unlawful, RFP process.

### **CONFIRE Was Unqualified to Participate in the RFP Process**

54.     Based on the confidential nature of the RFP process (Ex. 1, p. 19), AMR was unable to review CONFIRE's proposal prior to submitting its protest to the County and Board of Supervisors. Following the vote by the Board of Supervisors awarding the contract to CONFIRE, AMR obtained CONFIRE's proposal through a California Public Records Act request.

55.     Based on a review of the materials included therein, it is undisputable that CONFIRE, as well as its private subcontractor, Priority, had failed to meet the basic requirements set forth in the RFP. Because of this failure, disqualification was mandatory under the RFP, and CONFIRE's proposal should never have received consideration by the County, let alone the County's recommendation for further negotiation and ultimate award.

56.     Specifically, CONFIRE could not meet the following minimum qualifications:

57.     First, the RFP mandates that a bidder must demonstrate sufficient "organizational experience," which requires the bidder to have continuously engaged in the provision of 9-1-1 ambulance services under a contract for a large urban area with a population greater than

1,000,000. (*Id.*, p. 24). In addition, the bidder's contract with the large urban area must include the provision of multiple levels of ambulance services, including advanced life support, interfacility transport, and critical care transport services. (*Id.*). Further, the bidder must have provided the services continuously for five of the last seven years. (*Id.*).

58.     Neither CONFIRE, nor the fire agencies comprising its membership, possessed the organizational experience necessary to meet these requirements. CONFIRE instead attempted to rely on its private subcontractor, Priority, to meet the "organizational experience" standard. Priority is a private ambulance provider established in 2013 that has contracts in several smaller regions throughout the country for various levels of ambulance services. Priority has no California experience. Nevertheless, CONFIRE's proposal represented that Priority had sufficient organizational experience based on the ambulance services Priority provides in its largest service area, Maricopa County, Arizona. (*See* Ex. 9). This was false.

59.     Priority does not have a contract as the primary ambulance provider with Maricopa County itself; instead, Priority contracts with five municipalities that together comprise only a portion of Maricopa County. (*Id.*).

60.     Based on the information CONFIRE submitted with its proposal—which includes contract dates, population size for the areas served, and the types of services that Priority performs in these areas—it is readily apparent that the five municipalities with whom Priority currently contracts do not convey on Priority the requisite organizational experience necessary to meet the requirements of the RFP.

61.     For instance, Priority's contract with the City of Chandler, Arizona only commenced in or about January 2022 and thus fails to satisfy the durational requirement in the RFP, which requires the bidder to have continuously provided ambulance services for five of the last seven years. (*Id.*). Additionally, under that contract, Priority only provides the physical ambulance and an EMT driver—whereas the city provides the licensed paramedic on board the ambulance—and thus Priority itself is not capable of providing advanced life support services as required by the RFP. (*Id.*). Priority's contract with the City of Scottsdale, Arizona only includes the provision of basic life support services and does not include the provision of advanced life

support services required by the RFP, which are instead provided by the local fire department. (*Id.*). CONFIRE also represented that Priority has an active contract with the City of Surprise, Arizona, but in actuality, that contract is no longer active and thus should never have been included in CONFIRE's proposal to begin with. Yet, even if the contract *was* still active, it only allowed Priority to provide *backup* 9-1-1 ambulance response—as opposed to the *primary* 9-1-1 ambulance response services required by the RFP. (*Id.*). At best, then, Priority has only provided primary 9-1-1 ambulance response services for the requisite durational period for two municipalities in Maricopa County: the City of Glendale, Arizona, and the City of Goodyear, Arizona. (*Id.*). However, based on the population metrics submitted by CONFIRE, the combined population of these two municipalities only amounts to 338,000 residents—a far cry from the service area population of 1,000,000 required under the RFP. (*Id.*).

62.     Equally disqualifying for CONFIRE is the fact that *none* of Priority's contracts with the five municipalities in Maricopa County include the provision of critical care transport or interfacility transport services—both of which are mandated by the RFP's organizational experience requirement. (*Id.*).

63.     After it submitted its proposal in response to the RFP, CONFIRE received a letter from the County on or about April 7, 2023 wherein the County informed CONFIRE that "[a]fter a thorough review of your RFP submission, we are missing the demonstration of your subcontractor meeting the minimum qualification set forth in [the] RFP" under the organizational experience requirement. (Ex. 10). The County further stated that in order for CONFIRE's proposal to receive further consideration, it must "submit documentation demonstrating your subcontractor's ability to meet the minimum qualifications set forth in the RFP, specifically experience providing primary 9-1-1 ambulance services for a large urban area with a population greater than 1,000,000." (*Id.*).

64.     On or about April 11, 2023, CONFIRE responded to the County's letter in an attempt to make the requisite showing of its organizational experience. (Ex. 11). But no additional responsive documentation was provided—CONFIRE instead merely repeated the same information submitted with its initial proposal, again relying on Priority's limited history of providing ambulance services for the five municipalities in Maricopa County, which, as explained

VERIFIED COMPLAINT AND PETITION FOR WRIT OF MANDATE

1   above, is inadequate. (*See id.*).

2       65.    Notwithstanding CONFIRE's complete lack of organizational experience—which

3   is itself grounds for mandatory and immediate disqualification—the County never again raised the

4   issue. To the contrary, the County simply ignored this requirement, proceeded to negotiate with

5   CONFIRE, and ultimately recommended its draft contract to the Board of Supervisors for

6   approval. By disregarding these requirements and awarding the contract to an unqualified

7   provider, the County and Board of Supervisors violated the express terms of the RFP and put the

8   safety of the County's residents at risk.

9       66.    Beyond the aforementioned organizational experience requirement, the RFP further

10  included another mandatory provision requiring the recipient of the ambulance services contract to

11  agree to implement services by no later than April 1, 2024 (immediately following the expiration

12  of AMR's current contract on March 31, 2024). (Ex. 1, p. 2). This requirement is repeated

13  multiple times throughout the RFP, which further indicates that "[t]he County will not accept any

14  modifications to the RFP after the award." (*Id.*, p. 16).

15      67.    Notwithstanding this express language, CONFIRE is not prepared to commence

16  operations under the contract by April 1, 2024, as it is required to do. Instead, CONFIRE indicated

17  that it would not be able to implement services until October 1, 2024, at the earliest—which is six

18  months *after* the mandatory deadline in the RFP.

19      68.    Rather than disqualifying CONFIRE from further participation in the contract

20  selection process, the County, the Board of Supervisors, and ICEMA once again disregarded the

21  RFP and are moving forward with the exclusive contract with CONFIRE. At each step of the RFP

22  process, the Board overlooked the inferiority of CONFIRE's proposal as well as its inability to

23  meet the RFP's most basic qualifications.

24  **In Awarding the Contract to CONFIRE the County Considered Extraneous Criteria not Permitted by the RFP**

25      69.    During the December 5, 2023 regular meeting, in which the Board of Supervisors

26  considered the AMR and CONFIRE proposals, the Board of Supervisors took notice of an alleged

27  funding opportunity that awarding the contract to CONFIRE would purportedly afford.

28

Specifically, Board of Supervisors Chair Dawn Rowe referenced the fact that as a municipal Joint Powers Authority, CONFIRE would be eligible for certain state and federal government funding programs for the provision of ambulance services. Among the available funding programs is the Public Provider Intergovernmental Transfer ("PPIGT") program established by California Assembly Bill 1705, which entitles publicly operated ground ambulance providers to receive supplemental Medi-Cal reimbursement in addition to the rate of payment the provider would otherwise receive for those services. Private providers are not eligible for this funding. And even though CONFIRE would be relying on Priority—a *private* subcontractor—to perform the bulk of the services called for in the RFP and to provide over 90% of the funding for those services (Ex. 2, p. 276), CONFIRE would still be eligible for PPIGT funding as the prime contractor under the exclusive ambulance services contract. Indeed, Chair Rowe specifically cited the PPIGT program as the basis for her decision to vote in favor of CONFIRE, adding that "of the two proposers we heard today, CONFIRE JPA may be eligible for this funding. But only CONFIRE JPA."[3]

70.     Chair Rowe declared that, because CONFIRE was eligible for PPIGT funding, CONFIRE's proposal demonstrated the best value and would best meet the needs of the County. But the determination of which proposal demonstrated the best value and best met the needs of the County was already accounted for in the evaluation criteria specified in the RFP.

71.     Nowhere in the various scoring metrics set forth in the RFP for the evaluation of each bidder's proposal was access to government funding enumerated. Rather, to ensure a meaningfully competitive process as required by state and federal law, the RFP criteria made no distinction between public and private providers, nor their access to government funding programs.

## FIRST CAUSE OF ACTION

### Section 1 of the Sherman Anti Trust Act – 15 U.S.C. § 1

### (Against the County, the Board of Supervisors, and ICEMA)

72.     AMR realleges and incorporates all paragraphs in this Complaint and Petition as if

---

[3] *See* source cited *supra* note 1.

VERIFIED COMPLAINT AND PETITION FOR WRIT OF MANDATE

LARSON
LOS ANGELES

1   fully set forth herein.

2       73.     Exclusive contracts for local public services inherently operate as illegal restraints

3   on trade in violation of the Sherman Antitrust Act.

4       74.     A narrow exemption to antitrust liability for local governmental entities is available

5   where the challenged conduct is undertaken pursuant to a clearly articulated and affirmatively

6   expressed state policy to displace competition.

7       75.     California's clearly articulated and affirmatively expressed policy is set forth in the

8   EMS Act under Health and Safety Code section 1797.224, which authorizes a LEMSA to establish

9   an EOA *only* on the condition that "a competitive process is utilized to select the provider" and

10  that the competitive process receives approval from EMSA.

11      76.     For the purpose of selecting an exclusive ambulance provider, the County and

12  ICEMA established a competitive RFP process, which was subsequently approved by EMSA as

13  required by the EMS Act under Health and Safety Code section 1797.224. As such, the only

14  *legally permissible* means for the County and ICEMA to adopt an exclusive arrangement for EMS

15  services was through compliance with the procedures set forth in the state-approved RFP. The

16  criteria and procedures contained in the RFP accordingly provide the sole mechanism through

17  which the County, the Board of Supervisors, and ICEMA can select and enter into an exclusive

18  contract for ambulance services.

19      77.     Notwithstanding the foregoing legally-mandated procedure, the County, the Board

20  of Supervisors, and ICEMA acted in express violation of the RFP by virtue of the following

21  conduct:

22          a.   AMR received the highest score from the non-biased Review Committee.

23              The unambiguous terms of the RFP required that the County and ICEMA

24              enter into contract negotiations only with "the Proposer of the highest-

25              ranked proposal." (Ex. 1, p. 20). The County and ICEMA therefore had no

26              authority to enter into contract negotiations with CONFIRE. Moreover, the

27              unambiguous terms of the RFP further require that "a contract will be

28              awarded based on the highest scoring proposal received." (*Id.*, p. 21). But

upon completion of the negotiation process, the County further violated the RFP procedures by submitting the proposed contracts from both AMR and CONFIRE to the Board of Supervisors for ultimate consideration of award, notwithstanding AMR having received the highest score. (Exs. 3-4).

b. The Board of Supervisors thereafter violated the RFP procedures by voting to award the exclusive contract to CONFIRE, contrary to the express requirement that the "contract will be awarded" only to the "highest scoring proposal received." (Ex. 1, p. 21). By disregarding this requirement, the Board of Supervisors exceeded the lawful scope of its discretion and directly contravened the competitive process mandated by the clearly articulated and affirmatively expressed policy established under the EMS Act.

c. For similar reasons, reliance on extraneous criteria not enumerated in the RFP for the purpose of selecting an exclusive ambulance provider falls outside the scope of the Board of Supervisors' discretion. The Board of Supervisors' discretion is in fact defined solely by the criteria authorized by the competitive process approved by the state. The Board of Supervisors disregarded this statutory prohibition by awarding the exclusive contract for ambulance services based on its own subjective determination of which provider would offer the "best value" to the County.

d. The County, the Board of Supervisors, and ICEMA further violated the RFP by failing to enforce—and deliberately disregarding—the minimum qualifications enumerated thereunder. Based on the materials in CONFIRE's proposal, it was clear that its subcontractor, Priority, did not possess the requisite "Organizational Experience" required under the RFP because it did not continuously engage in the provision of 9-1-1 ambulance services, for five of the last seven years, at the requisite transport levels of care, and for the requisite service area of 1,000,000 residents. (*Compare* Ex.

1, p. 24 *with* Ex. 9). CONFIRE further failed to satisfy the mandatory requirement that it become operational by no later than April 1, 2024. In light of these glaring deficiencies, CONFIRE was subject to immediate disqualification from the RFP process and its proposal was prohibited from receiving any further consideration. The County, the Board of Supervisors, and ICEMA nevertheless deliberately disregarded these requirements.

e.   ICEMA further violated the RFP procedures by designating CONFIRE as the County's new exclusive ambulance provider for the EOA and entering into a contract with CONFIRE for that purpose. CONFIRE was not the winner of the competitive procurement process established by the RFP and it was not qualified under the minimum standards set by the RFP to provide emergency ambulance services.

78.   Because of the failure to adhere to the procedures and criteria in the RFP, which was established pursuant to California's clearly articulated and affirmatively expressed policy under the EMS Act, the conduct of the County, the Board of Supervisors, and ICEMA cannot be considered "state action" and consequently falls outside of the narrow exemption from antitrust liability afforded to such action.

79.   By authorizing CONFIRE to become the exclusive ambulance provider for the County's EOA, the County, the Board of Supervisors, and ICEMA entered into an agreement or conspiracy to confer exclusivity outside of the requirements mandated by the EMS Act.

80.   By conferring exclusivity on CONFIRE as the sole ambulance provider permitted to operate in the EOA, the aforementioned conspiracy or agreement was necessarily intended to harm or restrain competition.

81.   Because CONFIRE will be the exclusive provider of ambulance services, AMR will be prohibited from operating in the EOA and will be forced to cease operations in the County as a result. The significant ensuing financial harm to AMR is the direct result of the conduct of the County, the Board of Supervisors, and ICEMA in conferring exclusivity on CONFIRE.

82.   The restraint on competition resulting from the aforementioned conspiracy or

agreement has a substantial effect on interstate commerce. AMR provides ambulance transportation services utilizing the channels and instrumentalities of interstate commerce and responds to emergencies on streets and highways throughout the County, including the removal of obstructions from such streets and highways so as to enable commerce to move freely. In addition, AMR is part of a family of companies providing healthcare services in 40 states and the District of Columbia. As such, the County's illegal restraint on AMR's ability to participate in a competitive RFP process has a substantial effect on interstate commerce.

83.     If the County, the Board of Supervisors, and ICEMA are permitted to award an exclusive ambulance services contract to CONFIRE, AMR will be irreparably injured.

84.     AMR has no plain, speedy, or adequate remedy at law to address the irreparable injury described above.

## SECOND CAUSE OF ACTION

### Petition for Peremptory Writ of Mandamus – California Code of Civil Procedure §§ 1085 and 1094.5

### (Against the County, the Board of Supervisors, and ICEMA)

85.     AMR realleges and incorporates all paragraphs in this Complaint and Petition as if fully set forth herein.

86.     The County and ICEMA have a clear and present nondiscretionary duty to conduct the competitive process required by Health and Safety Code section 1797.224 in accordance with the rules and procedures published in the RFP, which was approved by EMSA pursuant to its authority under the EMS Act. The County and ICEMA are accordingly obligated to enforce the requirements of the RFP as written, including the procedures for selecting the highest-scoring proposal and enforcement of the minimum qualifications.

87.     Because AMR's proposal received the highest score, as determined by the non-biased Review Committee, the County and ICEMA had a ministerial duty to negotiate only with AMR. (*See* Ex. 1, p. 20-21). The County and ICEMA failed to adhere to this ministerial duty by negotiating with both AMR and CONFIRE and thereafter submitted draft contracts from both providers to the Board of Supervisors, in further violation of the RFP. (*See* Exs. 3-4). The County

1   and ICEMA additionally failed to comply with their ministerial obligations by deliberately

2   disregarding CONFIRE's demonstrated inability to satisfy the requisite minimum qualifications,

3   including its subcontractor's lack of organizational experience and its refusal to begin operations

4   within the timeframe required by the RFP.

5       88.     The Board of Supervisors similarly has a clear and present ministerial duty to

6   comply with the mandatory procedures established by the RFP. And to the extent that the Board of

7   Supervisors possesses any discretion in determining whether to award an exclusive contract for

8   ambulance services, such discretion is circumscribed by the dictates of the EMS Act. The Board of

9   Supervisors accordingly has a ministerial duty to comply with its statutory obligations, and any

10  discretion it otherwise possesses is limited by the criteria specified in the state-approved RFP.

11      89.     The Board of Supervisors therefore abused its discretion by awarding the exclusive

12  contract to CONFIRE. Because AMR was the highest-scoring bidder pursuant to the procedures

13  set forth in the RFP, the Board of Supervisors' discretion was limited to considering whether to

14  approve AMR's contract. Conversely, as the lowest-scoring bidder, CONFIRE's proposal was not

15  eligible for consideration by the Board of Supervisors, and the failure to adhere to this statutory

16  requirement constituted a flagrant abuse of discretion. The Board of Supervisors further abused its

17  discretion by failing to ensure that the County enforced the RFP's mandatory minimum

18  qualifications necessary for participation in the competitive bidding process—which CONFIRE

19  was indisputably incapable of fulfilling. Nor could the Board of Supervisors select CONFIRE

20  based on its subjective determination that CONFIRE's proposal would provide the best value to

21  the County. The Board of Supervisors made this determination as a result of CONFIRE's access to

22  state and federal funding programs; but whether a provider has access to government funding is

23  not among the criteria enumerated in the RFP and is thus an impermissible factor for the Board of

24  Supervisors to consider.

25      90.     Because AMR was the highest scoring bidder, once the evaluation process was

26  completed, ICEMA had a ministerial duty to ensure that only AMR would be designated as the

27  exclusive ambulance provider for the EOA. ICEMA failed to carry out this ministerial duty by

28  instead designating CONFIRE as the new exclusive ambulance provider and entering into an

LARSON
LOS ANGELES

exclusive contract for that purpose.

91.     Because the County improperly denied AMR's protest based on the false assertion that the Board of Supervisors possessed the sole discretion to determine which draft contract to select, notwithstanding the mandatory requirements of the RFP that only the highest scoring proposal would receive consideration for award of the contract, the County failed to carry out its mandatory duty to adjudicate any protest in compliance with law and the procedures set forth in the RFP.

92.     As the highest-scoring bidder in the RFP process, AMR has a clear and present beneficial right to the performance of the mandatory duties owed by the County, the Board of Supervisors, and ICEMA, including a beneficial interest in the receipt of the exclusive ambulance services contract. AMR was denied this right due to the foregoing violations.

93.     By lodging a formal protest with both the County and the Board of Supervisors, AMR exhausted all applicable legal remedies before commencing this action.

94.     AMR will suffer irreparable injury from the denial of the exclusive ambulance services contract in that it will be forced to discontinue providing ambulance services upon the expiration of its current contract, despite its more than 40 years of continuous service in the County and the County's citizens.

95.     AMR has no other plain, speedy, or adequate remedy at law to redress the denial of the exclusive ambulance services contract and thus must seek this petition for writ to protect its rights.

96.     AMR therefore requests that this Court issue a writ of mandate compelling the County, the Board of Supervisors, and ICEMA to set aside the decision to grant the exclusive ambulance services contract to CONFIRE. AMR further requests the issuance of a writ of mandate compelling the Board of Supervisors to comply with the procedures set forth in the RFP, which in turn requires awarding the exclusive ambulance services contract to AMR as the sole winner of the competitive bidding process.

97.     Although the aforementioned conduct challenged by AMR in this action is distinctly legislative in character, thereby warranting relief via a writ of traditional mandate

pursuant to Code of Civil Procedure section 1085, AMR alternatively seeks a writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5, which provides that in matters involving "any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal . . .," administrative mandamus shall issue where "respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion." Cal. Civ. Proc. Code § 1094.5(a)-(b).

98.     To the extent administrative mandamus is appropriate, the conduct alleged herein demonstrates that the County, the Board of Supervisors, and ICEMA acted in clear excess of their jurisdiction be conferring exclusivity on CONFIRE in violation of their authority as authorized under the EMS Act.

### THIRD CAUSE OF ACTION

### Declaratory Relief – California Code of Civil Procedure Section 1060

### (Against All Defendants)

99.     AMR realleges and incorporates all paragraphs in this Complaint and Petition as if fully set forth herein.

100.     ICEMA, acting within the control by the County and Board of Supervisors, annually sets the rates that ambulance providers may charge for ambulance transports and related expenses.

101.     California Constitution section XIII C, as amended by Proposition 26 in 2010, sets forth the requirements for local government-imposed charges. Among other things, these requirements mandate that the "local government" that "impose[s]" fees may not, without voter approval, generate revenues beyond the cost of providing a municipal service.

102.     In the materials submitted in connection with CONFIRE's proposal, CONFIRE informed the County that, for the first year alone, it anticipates generating approximately $17.6 million in revenue beyond the cost of providing ambulance services in the County. (*See* Ex. 12) Altogether, CONFIRE expects to generate approximately $63.3 million in *excess* revenue over the

1    course of the five-year contract.

2          103.    AMR is informed and believes, and on that basis alleges, that should CONFIRE be

3    permitted to begin providing ambulance service under the exclusive contract awarded by the

4    County, CONFIRE has admitted that it will charge ambulance service payors for more than the

5    cost of service it incurs to provide the service. Moreover, on information and belief, CONFIRE's

6    proposed ambulance rates do not include any rate offset to account for the additional revenue it

7    would generate through government funding sources, such as the PPIGT program. In this regard,

8    CONFIRE will impose a charge that California Constitution Article XIII C deems a "tax"

9    requiring voter approval—which has not been obtained and for which no exception under § 1(e) of

10   the article is provided.

11         104.    AMR is informed and believes, and on that basis alleges, that CONFIRE's

12   representations about the excess revenue it would generate from providing ambulance service was

13   an important and motivating factor in the Board of Supervisors' decision to disregard the RFP

14   procedures and award CONFIRE the exclusive ambulance services contract.

15         105.    AMR is informed and believes, and on that basis alleges, that because of the

16   overlapping governance structures of the County and CONFIRE's member agencies, the Board of

17   Supervisors had strong incentive to favor—and for revenue-generation reasons, did favor—the

18   selection of CONFIRE as the exclusive ambulance provider notwithstanding it receiving a lower

19   score in the RFP process.

20         106.    AMR is injured by CONFIRE's anticipated violation of Article XIII C in that

21   CONFIRE's ability to generate revenues beyond its cost of service gave it an unfair competitive

22   advantage over AMR in the Board of Supervisors' decision in awarding the exclusive ambulance

23   services contract. To the extent AMR would participate in a future competitive bidding process,

24   CONFIRE would continue to be able to tout its ability to generate excess revenue as an advantage

25   for favoring CONFIRE over AMR, making any future RFP submission by AMR futile.

26         107.    A present, justiciable controversy exists between AMR and all Defendants as to the

27   lawfulness of ICEMA's setting of, and CONFIRE's charging of, ambulance service rates that

28   generate revenue beyond the cost to provide service. Judicial declarations by this Court are

LARSON
LOS ANGELES

VERIFIED COMPLAINT AND PETITION FOR WRIT OF MANDATE

1   accordingly necessary and proper.

2        108.    AMR has no plain, speedy, or adequate remedy at law to address the controversies

3   described above.

4                    **<u>PRAYER FOR RELIEF</u>**

5      **WHEREFORE,** AMR prays for judgment against all Defendants and Respondents as

6   follows:

7        1.    Against the County, the Board of Supervisors, and ICEMA: for a declaration that

8   awarding an exclusive contract for ambulance services through a selection process that fails to

9   adhere to the procedures mandated by the state-approved RFP constitutes an illegal restraint on

10   competition in violation of section 1 of the Sherman Antitrust Act;

11        2.    Against the County and ICEMA: for an injunction pursuant to 15 U.S.C section 26

12   permanently enjoining the County and ICEMA from proceeding with the exclusive ambulance

13   services contract with CONFIRE;

14        3.    Against the Board of Supervisors: for an injunction pursuant to 15 U.S.C section 26

15   permanently enjoining the Board of Supervisors from violating the procedures mandated by the

16   RFP;

17        4.    Against the County and ICEMA: for a writ of mandate pursuant to Code of Civil

18   Procedure section 1085, or a writ of administrative mandamus pursuant to Code of Civil

19   Procedure section 1094.5, requiring the County to grant AMR's protest, and requiring the County

20   and ICEMA to set aside the exclusive ambulance services contract with CONFIRE, and to

21   perform their ministerial duty to present only AMR's proposal and negotiated contract for

22   ratification by the Board of Supervisors in accordance with the RFP;

23        5.    Against the Board of Supervisors: for a writ of mandate pursuant to Code of Civil

24   Procedure section 1085, or a writ of administrative mandamus pursuant to Code of Civil

25   Procedure section 1094.5, requiring the Board of Supervisors to grant AMR's protest and carry

26   out its ministerial duty to award the exclusive ambulance services contract based solely on the

27   procedures mandated by the state-approved RFP;

28   *//*

6.      Against all Defendants: for a declaration that the Defendants may not set or charge ambulance service rates at amounts that would generate revenues in excess of CONFIRE's cost to provide ambulance services;

7.      For attorneys' fees and costs incurred in bringing this suit; and

8.      For such other relief as the Court deems just and appropriate.


Dated:  February 2, 2024            LARSON LLP



                                    By: _____
                                        Stephen G. Larson
                                        Jonathan E. Phillips
                                        Mehrunisa Ranjha
                                        Benjamin Falstein
                                        Attorneys for Petitioner and Plaintiff

**VERIFICATION**

I am the attorney for Plaintiff and Petitioner American Medical Response of Inland Empire ("AMR") in the above entitled action and am authorized to make this verification on its behalf. AMR and its corporate officers are absent from Los Angeles County, where I have my office, and are therefore unavailable to verify the Verified Complaint and Petition for Writ of Mandate. I have read the foregoing Verified Complaint and Petition for Writ of Mandate and know its contents. I am informed and believe, and on that ground allege, that the matters stated in the Verified Complaint and Petition for Writ of Mandate are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 2, 2024, at Los Angeles, California.


_____
Stephen G. Larson

LARSON
LOS ANGELES

VERIFIED COMPLAINT AND PETITION FOR WRIT OF MANDATE